UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
KINGVISION PAY-PER-VIEW LTD.,             :
as Broadcast Licensee of the              :
Nov. 13, 2004 Ruiz/Golota program,        :
                                          :
                   Plaintiff,             :
                                          :
         -against-                        :   06 Civ. 3613 (DAB)(THK)
                                          :
JUSTA PEREZ, individually and as          :   **REPORT AND**
officer, director, and principal of       :   **RECOMMENDATION**
EL COMEDERO RESTAURANT, INC.,             :
D/B/A EL COMEDERO RESTAURANT              :
                                          :
                   Defendants.            :
------------------------------------X

**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**
**TO: HON. DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE.**

This action arises under Sections 553 and 605 of the Cable Communications Policy Act of 1984 ("the Communications Act"). Plaintiff Kingvision Pay-Per-View Ltd. ("Plaintiff") alleges that Defendant Justa Perez, individually, and as principal of Defendant El Comedero Restaurant ("El Comedero"), violated the Communications Act by unlawfully intercepting and displaying a telecast for which Plaintiff had exclusive distribution rights. Plaintiff further alleges that Perez and El Comedero (collectively "Defendants") violated the Communications Act by knowingly modifying a device in order to secure the unauthorized decryption of satellite cable programming, including the transmission for which Plaintiff had distribution rights.

After a default judgment was entered against Defendants, based on their failure to file an answer or otherwise respond to the

1

Complaint, the action was referred to this Court for an inquest on damages. Pursuant to the Court's directive, Plaintiff submitted an affidavit and other documentation to establish a factual basis for, and the legal authority in support of, its request for damages, to which Defendants were given an opportunity to respond. Defendants failed to file any response or objections.

For the reasons that follow, this Court recommends that a default judgment be entered against Defendants, jointly and severally, for statutory damages in the amount of $17,700, attorney's fees in the amount of $761.50, and costs in the amount of $550, for a total judgment of $19,011.50.

## DISCUSSION

I. Legal Standards

Upon the default of a party, a court must accept all factual allegations of the complaint as true, except those relating to damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, see Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975), and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks. See Credit Lyonnais Sec. (USA),

Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986) (when a defendant defaults, "the factual allegations of the complaint relating to liability are taken as true, but the allegations relating to the amount of damages are not"). A court may determine the appropriate damages on the basis of affidavits and other documentary evidence, "as long as [the Court has] ensured that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

II. Established Facts and Liability

As a result of Defendants' default, the following facts in the Complaint are deemed admitted and establish Defendants' liability under the Communications Act.

Plaintiff held the exclusive right to distribute the November 13, 2004 Ruiz/Golota boxing event ("the Fight") via closed circuit television and satellite television. (See Complaint ("Compl.") ¶ 15; see also Plaintiff's Memorandum in Support of Damages ("Pl.'s Mem."), at 1.)[1] Plaintiff subsequently entered into agreements with business establishments in New York State, permitting them to

---

[1] Plaintiff's Memorandum in Support of Damages does not contain page or paragraph numbers. The page numbers cited herein represent the order in which the pages were submitted to the Court.

exhibit the Fight to their customers for a fee. (See Compl. ¶ 16; see also Affidavit of Donna K. Westrich, dated Oct. 27, 2006 ("Westrich Aff."), ¶ 3.) In order to protect its exclusive right to distribute the Fight, Plaintiff hired independent auditors to investigate business establishments that exhibited the Fight without Plaintiff's permission. (See Westrich Aff. ¶ 4.)

On the night of the Fight, one of Plaintiff's auditors entered El Comedero Restaurant, an establishment with an estimated capacity of twenty-two persons; the auditor did not pay a cover charge and observed two television sets showing the Fight to approximately nine patrons. (See Westrich Aff. ¶ 7.) Defendants did not receive Plaintiff's permission to exhibit the Fight. (See Westrich Aff. ¶¶ 6, 8; Compl. ¶¶ 18-19, 32.) Defendants' ability to exhibit the Fight was made possible by their unlawful interception, reception, or de-scrambling of the transmission, aided by Defendants' modification of a device to do the same.[2] (See Compl. ¶¶ 18-19, 26.)

Plaintiff also asserts that Defendants are repeat offenders. Plaintiff's attorney represents that her files contain affidavits attesting to Defendants' piracy of the September 18, 2004

---

[2] Plaintiff also asserts that the Fight cannot be "mistakenly or innocently intercepted." (Westrich Aff. ¶ 10.) Some methods Defendants may have used include: the use of a "black box" to de-scramble the coded transmission, purposeful misrepresentation of El Comedero Restaurant as a residential property (to allow for the purchase of the Fight at the significantly lower residential price), or illegally splitting the cable feed from an adjacent premise which lawfully obtained the Fight. (See id.)

DeLaHoya/Hopkins boxing program, and the October 2, 2004 Trinidad/Mayorga boxing program. (See Affidavit of Julie Lonstein, dated Mar. 13, 2007 ("Lonstein Aff."), ¶¶ 5-6; Exhibits B & C, annexed to Lonstein Aff.)

These facts establish Defendants' liability for the following violations of the Communications Act. Section 605(a) prohibits the unauthorized interception of radio communications. See 47 U.S.C. § 605(a).[3] Subsection 605(e)(4) prohibits the use of equipment for the purpose of unauthorized decryption of satellite cable programming in addition to any radio communications covered by Section 605(a). See 47 U.S.C. § 605(e)(4).[4] Section 553(a)(1) prohibits the unauthorized interception or receipt of cable programming. See 47 U.S.C. § 553(a)(1).[5]

---

[3] Section 605(a) reads: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a).

[4] Subsection 605(e)(4) reads: "Any person who manufactures, assembles, modifies, . . . sells, or distributes any electronic, mechanical or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) [of this section], shall be fined . . ." 47 U.S.C. § 605(e)(4).

[5] Section 553(a)(1) reads: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be

5

These provisions collectively prohibit the unauthorized interception and reception of cable programming services, such as Plaintiff's telecast, which originate from and are delivered either via satellite or another form of over-the-air transmission. See Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 547-48 (S.D.N.Y. 1998)(citing Int'l Cablevision, Inc. v. Sykes and Noel, 75 F.3d 123, 133 (2d Cir. 1996) ("Sykes II")); Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997).[6]

III. Damages

In order to collect damages under the above statutes, a plaintiff must be an "aggrieved person" within the meaning of 47 U.S.C. §§ 553(c)(1) or 605(e)(3)(A). A plaintiff's possession of proprietary rights to an unlawfully intercepted communication satisfies this standard under both statutes. See, e.g., Joe Hand Promotions, Inc. v. Fofana, No. 06 Civ. 2099 (RJH), 2007 WL 2298372, at *4 (S.D.N.Y. Aug. 2, 2007). As the party possessing proprietary rights in the communications which Defendants unlawfully intercepted, Plaintiff is an aggrieved party under both

---

specifically authorized by law." 47 U.S.C. § 553(a)(1).

[6] Section 553 applies only to transmissions over cable systems while the broader Section 605(a) applies to transmissions over both cable and satellite systems. See Sykes II, 75 F.3d at 132-33. Therefore, "when pay television programming is transmitted over both cable and satellite mediums, both statutes apply. . . ." Lokshin, 980 F. Supp. at 112 (citing Sykes II, 75 F.3d at 130).

6

statutes.

When a defendant has been found to have violated both sections 553 and 605 of the Communications Act, the plaintiff may elect to recover either actual or statutory damages under either, but not both, of those statutes. See Cmty. Television Sys. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002); see also Sykes II, 75 F.3d at 129; Int'l Cablevision v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I"); Garden City Boxing Club, Inc. v. Polanco, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); Garden City Boxing Club, Inc. v. Salcedo, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *1 (S.D.N.Y. Nov. 3, 2005); Cablevision Sys. New York City Corp. v. Landron, No. 02 Civ. 2957 (LAK), 2003 WL 430347, at *2 (S.D.N.Y. Jan. 21, 2003); Cablevision Sys. New York City Corp. v. Miller, No. 01 Civ. 4355 (LLS) (FM), 2002 WL 1966941, at *3 (S.D.N.Y. July 23, 2002) (Report and Recommendation, adopted on Aug. 5, 2002).

In the instant case, Plaintiff has elected to recover statutory damages under 47 U.S.C. § 605. Under that section, this Court may award statutory damages for violations, "in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court may also award additional, "enhanced" damages by an amount of not more than $100,000 for violations committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain. . . ." 47 U.S.C. § 605(e)(3)(C)(ii); see also Cmty Television Sys.,

7

284 F.3d at 434.

Willfulness in this context can be demonstrated by a defendant's engaging in the affirmative act of installing and utilizing a "pirate" descrambler or some other device in order to illegally receive a transmission. See Lokshin, 980 F. Supp. at 114 (noting that the defendant's "conduct undoubtedly was willful since he took measures to purchase and install an unauthorized descrambler"); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (regarding defendant's conduct as willful because "[i]n order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission"). Furthermore, courts in this Circuit have concluded that a defendant's "default itself could further be viewed as evidence of willfulness." Lokshin, 980 F. Supp. at 114. (citing Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)); but see Kingvision Pay-Per-View, Ltd. v. Langthorne, No. 01-11079-NG, 2001 WL 1609366, at *1 (D. Mass. Nov. 28, 2001) (while some courts have upheld the notion that the default judgment "automatically gives rise to an 'inference of willfulness' on their part . . . [t]he federal courts have actually split on the availability of such an inference").

In the instant case, Plaintiff seeks the full amount of available statutory damages - $10,000. (See Pl.'s Mem., at 7.)

Regarding enhanced damages, Plaintiff contends that Defendants' flagrant piracy, commercial gain from selling food and drink to patrons watching the Fight, failure to subsequently appear in court, and indifference towards the communications laws justify awarding the maximum amount of $100,000. (See id. at 5-6.) Plaintiff also notes that such acts of signal piracy have cost it "millions of dollars," which have resulted in higher costs for lawful customers. (Westrich Aff. ¶ 13.)

Although there is no precision with which statutory damages can be determined in a case such as this, there should be some proportionality between the loss suffered and the amount of damages, in addition to factoring in such concerns as the potential loss of confidence by businesses in distributing Plaintiff's telecast if unlawful access and the associated lost revenue is not effectively deterred. Some courts in the Second Circuit have awarded damages based on the number of patrons in the establishment at the time of the violation, often increasing the award to further penalize willful violators and to deter future violations. See, e.g, Garden City Boxing Club, 2005 WL 2898233, at *2-3 (awarding the plaintiff $250 per patron, though acknowledging judicial acceptance of the $300 per patron rate); New Contenders, Inc. v. Diaz Seafood Corp., No. 96 Civ. 4701 (AGS)(HP), 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron, taking into account defendant's profits from the sale of food and drink); Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 63

(E.D.N.Y. 2006) (noting that decisions range from $20 to $300 per patron penalties, but ultimately awarding $50 per patron); Joe Hand Promotions, Inc. v. Marius, No. 05 Civ. 8472 (DAB) (THK), 2007 WL 2351065 at *4 (S.D.N.Y. July 3, 2007) (awarding $50 per patron plus a $7,500 enhancement); King Vision Pay-Per-View Corp. v. Clonback, Inc., 06 Civ. 9771 (LMM) (THK) (S.D.N.Y. Mar. 26, 2004), (Not Reported) (awarding $100 per patron in addition to the fee the defendants would have had to pay to lawfully televise the unlawfully intercepted event in their commercial establishment).

Other courts have awarded a flat amount in damages. See, e.g., King Vision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, No. 01 Civ. 9775 (JGK) (JCF), 2004 WL 473306, at *4 (S.D.N.Y. Mar. 12, 2004) (recommending award of $5,000 in statutory damages and enhancing it by an additional $5000 for willful conduct); Joe Hand Promotions, Inc. v. Soto, No. 01 Civ. 0329 (GBD) (AJP), 2003 WL 22962810, at *2 (S.D.N.Y. Dec. 17, 2003) (recommending $10,000 in statutory damages and doubling the award for willful conduct); King Vision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583 (JSM)(RLE), 2003 WL 21383826, at *4-5 (S.D.N.Y. June 11, 2003) (recommending award of $1,000 in statutory damages, with a $4,000 enhancement for willful conduct); King Vision Pay-Per-View Corp. v. Papacito Lidia Luncheonette, Inc., No. 01 Civ. 7575 (LAK)(AJP), 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000 to plaintiff when defendant restaurant illegally intercepted and displayed a pay-per-view boxing match to 10 to 15 customers); Kingvision Pay-Per-View,

Ltd. Corp. v. New Paradise Rest., No. 99 Civ. 10020 (WHP)(AJP), 2000 WL 378053, at *2 (S.D.N.Y. Apr. 11, 2000) (awarding $20,000 when defendant restaurant intercepted and displayed a boxing match to 12 patrons).

Some courts have simply awarded the maximum statutory rate, when a precise amount of actual damages based on usage could not be ascertained. See, e.g., Cablevision of New York City Corp. v. Flores, No. 00 Civ. 5935 (GEL)(GWG), 2001 WL 761085, at *3-4 (S.D.N.Y. July 6, 2001) (holding that the full statutory amount is appropriate because defendant's conduct was willful, such an award would have a large deterrent effect, and "[b]ecause of the defendant's failure to answer the complaint or make any submission on the issue of damages, it has been impossible to determine either the actual amount of revenue lost by Cablevision and/or the amount of money saved by defendant").

This Court is of the view that statutory damages in the amount of $2,700 are appropriate against Defendants, jointly and severally. There were nine patrons at Defendants' premises viewing the Fight. The Court recommends an award of $100 per patron. However, because this is known to be Defendants' third violation of the Communications Act, the Court recommends that the statutory damages be trebled for a total award of $2700.

In the past, this Court has recommended a statutory enhancement in the amount of $5,000 against other defendants, because, like Defendants here, their willful violation of the

Communications Act and their lack of respect for the law, as demonstrated by their failure to respond to or address the plaintiff's allegations, are deserving of additional financial penalties. See Kingvision v. Ruben Salcedo, No. 06 Civ. 4807 (RLC) (THK) (S.D.N.Y. Mar. 31, 2008) (not reported). However, because this is Defendants' third known violation, the Court recommends that Defendants pay enhanced damages of $15,000. In addition, the Court finds this amount appropriate because Defendants had to take affirmative action in order to unlawfully intercept or receive the telecast of the Fight.[7] This affirmative act constitutes willfulness. See Taco Rapido Rest., 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission"). Furthermore, Defendants' default constitutes additional evidence of willfulness. See Lokshin, 980 F. Supp. at 114. (citing Fallaci, 568 F. Supp. at 1173); see also Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830 (DC), 1996 WL 48689, at *2-3 (S.D.N.Y. Feb. 7, 1996).

---

[7] As noted earlier, Defendants may have used a "black box" to illegally de-scramble the coded transmission, purposefully misrepresented El Palacio as a residential property, or illegally split the cable feed from an adjacent premise which lawfully obtained the Fight. (See Westrich Aff. ¶ 9.)

IV. <u>Attorneys' Fees and Costs</u>

Plaintiff also seeks attorneys' fees of $761.50. (<u>See</u> Lonstein Aff., ¶ 4.) Under Section 605, this Court may award "reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Reasonable attorneys' fees are generally determined by the "lodestar" method, in which the court multiplies the number of hours reasonably spent by an attorney or paralegal assistant by an appropriate hourly rate. <u>See</u> <u>City of Burlington v. Dague</u>, 505 U.S. 557, 559, 112 S. Ct. 2638, 2640 (1992); <u>Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1159 (2d Cir. 1994); <u>see also</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections</u>, 522 F.3d 182, 190 (2d Cir. 2008) (abandoning the use of the term "lodestar" and directing district courts to determine a "presumptively reasonable fee" by "bear[ing] in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.").

To determine whether time was reasonably spent, a court must evaluate the tasks and the time documented in counsel's contemporaneous time records in light of its general experience and its specific experience with the case. <u>See</u> <u>N.Y. State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146-48 (2d Cir. 1983); <u>Perishable Food Industry Pension Fund v. American Banana Co., Inc.</u>, No. 01 Civ. 1922 (LMM)(RLE), 2003 WL 21542316 at *5 (S.D.N.Y. July

1, 2003). A reasonable hourly rate is ordinarily determined by the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)), and it is permissible for a court to rely upon its own knowledge of private firm hourly rates in deciding what reasonable rates are in the community. See Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987); Wise v. Kelly, No. 05 Civ. 5442 (SAS) (THK), 2008 WL 482399 at *4 (S.D.N.Y. Jan. 31, 2008) (Report and Recommendation, adopted on Feb. 21, 2008). The community is defined presumptively, but not conclusively, as the district within which the court is located. See Arbor Hill, 522 F.3d at 191. Finally, a party seeking an award of attorneys' fees must support its request with contemporaneous time records which show "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, 711 F.2d at 1148.

Plaintiff's attorney, Julie Cohen Lonstein ("Lonstein"), of Lonstein Law Office, P.C., has submitted an affidavit in support of the attorneys' fees request, including a breakdown of the time expended by herself and paralegal assistants in pursuing this action, and the costs which were incurred. (See Lonstein Aff. ¶ 4.) The affidavit reflects that a total of 2.87 attorney hours, at

an hourly rate of $200, and 2.5 paralegal hours, at an hourly rate of $75.00, were expended. (See id.)

The number of hours billed by Lonstein is modest and reasonable, as is the hourly rate billed by Lonstein. Lonstein's rate of $200 per hour is not outside the range of rates charged by attorneys in the Southern District of New York and recognized as reasonable by judges in this court. In similar cases involving violations of the Communications Act, Lonstein's applications for attorneys' fees at a $200 hourly rate and with a similar amount of billed hours, have been found to be reasonable. See, e.g., Marius, 2007 WL 2351065, at *4; J&J Sports Prods., Inc. v. Mendoza, No. 06 Civ. 6846 (ILG) (CLP), 2008 WL 170199, at *10 (E.D.N.Y. Jan. 16, 2008); Joe Hand Promotions, Inc. v. El Norteno Rest. Corp., No. 06 Civ. 1878 (RJD) (JMA), 2007 WL 2891016, at *5 (E.D.N.Y. Sept. 28, 2007). More generally, a $200 hourly rate is well within the range supported by case law. See Cmty. Television Sys., 284 F.3d at 437 (affirming award of attorneys' fees where hourly rates of the most experienced attorney on the case ranged between $240 and $275); Time Warner Cable of N.Y. City v. Sanchez, No. 02 Civ. 5855 (GBD) (FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003) (allowing hourly rates ranging between $165 and $240). Similarly, the amount of hours billed and the hourly rate of $75 for work done by paralegal assistants are both reasonable. See Sanchez, 2003 WL 21744089, at *4 (finding reasonable almost nine hours of paralegal work billed at an hourly rate of $85 in a case with similar facts);

El Norteno Rest. Corp., 2007 WL 2891016, at *5 (finding reasonable an hourly rate of $75 for paralegal work). Accordingly, an award of attorneys' fees in the amount of $761.50 against Defendants, jointly and severally, is appropriate.[8]

Section 605 also permits this Court to award the recovery of full costs. See 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks an award of costs in the amount of $550; $350 for filing expenses and $200 for service of process fees. (See Lonstein Aff. ¶ 3.) These expenses are properly documented. (See Exhibit A annexed to Lonstein Aff.; Service of Process Invoice.) Accordingly, Plaintiff is entitled to costs in the amount of $550.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that a judgment be entered for Plaintiff awarding: (1) $17,700 in statutory damages; (2) $761.50 for attorneys' fees; and (3) $550 for costs, against Defendants, jointly and severally, for a total judgment of $19,011.50

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the

---

[8] This Court infers from Lonstein's affidavit that the chart documenting her firm's time expended on this case was derived from contemporaneous time records. In future applications, Lonstein should be explicit about the source of such a chart.

chambers of the Honorable Deborah A. Batts, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Batts. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 147-48, 106 S. Ct. 466, 471 (1985); Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002); Spence v. Superintendent, 219 F.3d 162, 174 (2d Cir. 2000).

Respectfully Submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: August 4, 2008
New York, New York

Copies mailed to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill, P.O. Box 351
Ellenville, New York 12428

Justa Perez
505 W. 162nd St., Apt. 107
New York, NY 10032

El Comedero Restaurant
2102 Amesterdam Ave.
New York, NY 10032